986 F.2d 1424
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Bernell HAMPTON, Plaintiff/Appellant,
v.
James E. O'GRADY, et. al, Defendants/Appellees.
 No. 92-1939.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 2, 1993.*
Decided Feb. 11, 1993.
 
 Before POSNER and KANNE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 
 ORDER
 
 1
 Bernell Hampton brings this suit under 42 U.S.C. § 1983, claiming deliberate indifference to his conditions of confinement and to his medical care. The district court granted summary judgment in favor of the defendants, and we AFFIRM for the reasons stated in the attached district court order.
 
 ATTACHMENT
 IN THE UNITED STATES DISTRICT COURT
 FOR THE NORTHERN DISTRICT OF ILLINOIS
 EASTERN DIVISION
 
 2
 Bernell Hampton, Plaintiff,
 
 
 3
 v
 
 
 4
 James E. O'Grady, et al., Defendants.
 
 No. 89 C 7352
 
 5
 (April 1, 1992).
 
 MEMORANDUM OPINION AND ORDER
 
 6
 Bernell Hampton brings this action pursuant to 42 U.S.C. § 1983 alleging deliberate indifference to his conditions of confinement and to his medical care. Defendants Spencer Leak, James D. Cooper, Mary Jeter, Chris Staszak, and Thomas Stewart have filed a motion for summary judgment.[1]
 
 I. Standard of Review
 
 7
 Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of submitting affidavits and other evidentiary material to show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Once the moving party has sustained the initial burden, the opposing party may not rest upon the mere allegations or denials of the pleadings, but instead must come forward with specific evidence, by affidavits or as otherwise provided in Rule 56, showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324.
 
 II. Facts
 
 8
 The facts as Hampton alleged them in his complaint were recounted in this court's previous Memorandum Opinion and Order. According to defendants' statement of material facts to which there is no genuine issue, Hampton entered Cook County Jail on April 10, 1989,[2] given a routine physical and mental examination, and assigned to sleep in the dayroom section of Division 5, Tier J-1 (Df. Exhibit 2). On April 11 a routine maintenance work order was issued to repair the toilet in Lower Cell 6, and the work was completed on April 14 (Df. Exhibit 4). On April 16 Hampton was assigned to Lower Cell 6 (Df. Exhibit 2). On April 17 a work order was again issued to repair the toilet in Cell 6, and the work was completed on April 19 (Df. Exhibit 5). On April 19 Hampton and his cellmate shouted for help from Cell 6, and the duty officer went over to the cell and saw them lying on the floor (Df. Exhibit 3, Tab 3C). They told the officer that Hampton's cellmate had slipped on some water on the floor and that Hampton had injured himself in an attempt to break his cellmate's fall. The duty officer then sent them to the paramedics who gave them ice packs (Df. Exhibit 3, Tab 3C). Hampton was seen on regular medical rounds (Df. Exhibits 8-10). Dr. Cooper saw Hampton on December 20 and recognized him because he had seen Hampton on his rounds. During that visit Hampton's chief complaint was not about back pain and he refused Dr. Cooper's offer of follow-up X-rays (Df. Exhibit 10). On April 21, Hampton was reassigned to the dayroom, which meant that he spent five nights in Lower Cell 6 (Df. Exhibit 2).[3]
 
 III. Analysis
 A. Conditions of Confinement
 
 9
 Prisoners who claim that conditions of confinement constitute cruel and unusual punishment in violation of the Eighth Amendment[4] must show deliberate indifference on the part of prison officials. Wilson v. Seiter, 111 S.Ct. 2321, 115 L.Ed.2d 271, 59 U.S.L.W. 4671 (1991). Hampton's complaint survived the original motion to dismiss because he alleged that he had informed five correctional officers about the dangerous condition of the water on the floor, and only one of them had made any effort to move him to a safer cell. As this court stated then, the facts as Hampton alleged were similar to those in Jones v. Morris, 777 F.2d 1277 (7th Cir.1985), in which the Seventh Circuit determined that allowing a dangerous condition to remain unremedied, particularly after correctional officials have been informed about the problem, may rise to the level of deliberate indifference to a prisoner's safety.
 
 
 10
 In this case defendants have not ignored a dangerous condition. They have attached several documents indicating that the toilet was repaired before Hampton was assigned to the cell and again after he was in the cell (Df. Exhibits 4 and 5). These documents alone negate any inference that correctional officers have acted with deliberate indifference to Hampton. He may have preferred to be moved to another cell, but a decision on whether it would be better to move Hampton or repair the leak is the type of decision best left in the hands of prison and jail administrators. See Hewitt v. Helms, 459 U.S. 460, 467 (1983).
 
 
 11
 Hampton has attached the affidavit of Obie Warlick aka Micheel Smith, who states that water leakage and seepage was a constant problem on 1-J, division-5 at the CCDOC (Pl. Exhibit A-2), and excerpts from reports by the John Howard Association that indicate that maintenance of plumbing fixtures, pipes and drains is a serious problem (Pl. Exhibits B-1 through B-5). These signify merely that there were plumbing problems; they address in no way that jail officials were deliberately indifferent to Hampton's conditions of confinement.
 
 
 12
 Defendants have gone to great lengths to demonstrate that Hampton may not have actually told the various correctional officers about the water on the floor, as he alleged. Hampton has gone to equally great lengths to refute this claim.[5] In light of the documentation about the repairs on the toilet, whether or not Hampton actually told the officers that there was water on the floor does not rise to the level of a dispute of a material fact.
 
 
 13
 Because Hampton has been unable to demonstrate that any of the defendants' acted with deliberate indifference in regard to his conditions of confinement, this claim is dismissed.
 
 B. Medical Care
 
 14
 Hampton must show deliberate indifference to his serious medical needs in order to state a claim for relief under § 1983. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). In this circuit, " 'deliberate indifference' is merely a synonym for intentional or criminally reckless conduct." Salazar v. City of Chicago, 940 F.2d 233, 238 (7th Cir.1991). Hampton's claim of deliberate indifference to his serious medical needs survived the original motion to dismiss because he alleged that he had not seen a doctor between the time of his fall on April 19 and December 20. As the court stated then, allegations of delayed access to needed medical care may also violate the Eighth Amendment under Estelle, 429 U.S. at 104-05; see also Duncan v. Duckworth, 644 F.2d 653, 654 (7th Cir.1981).
 
 
 15
 Defendants have tendered the affidavit of Alvery Johnson, the director of Emergency Medical Technician Services for Cermak Health Services, who states that inmates may access health care at Cook County Jail by 1) notifying the correctional officer on duty of a medical need, who will then notify Cermak Health Services; 2) speak directly to paramedics who make tier rounds three times a day; or 3) submit a written request.
 
 
 16
 Hampton acknowledges that immediately after the fall both he and his cellmate were taken to a paramedic who gave them ice packs and told them to sign up to see a doctor. Hampton then claims that he asked the correctional officer to sign him up to see a doctor. Other than his own affidavit, he has submitted nothing that would indicate that his request was either refused or ignored.
 
 
 17
 Defendants' Exhibit 9 consists of the affidavit of A.M. Marshall, a paramedic with Cermak Health Services, and a copy of the Daily Encounter Form for April 24, five days after Hampton fell. Marshall states that Hampton signed the form in his presence, and that the form records that Hampton complained only of a rash in his groin area. Marshall continues that if Hampton had any other medical problems that day, he did not inform him. Defendants have also submitted the affidavit of Doris Reese, a paramedic at Cermak Health Services, and a copy of the Daily Encounter Form for November 21, which records that Hampton received sudafed, CTM, and tylenol that day but made no other complaints to the paramedic (Df. Exhibit 8).
 
 
 18
 Defendants have also tendered the affidavit of Dr. Scott B. Cooper, who was a licensed physician with Cermak Health Services during the time in question and who examined Hampton on December 20, and a copy of the Out-Patient Progress Notes (Df. Exhibit 10). Among several other ailments, Hampton complained of lower back pain. Cooper states that he examined Hampton's back and ruled out a possible disc injury because he had a negative straight leg raise. Cooper then offered to have X-rays done on Hampton's back to find out what might be the cause of Hampton's lower back pain but Hampton refused. Cooper's affidavit also states that his notes indicate that he saw Hampton on his previous tier rounds.[6]
 
 
 19
 All these affidavits and records defeat Hampton's claim that officials at Cook County Jail were deliberately indifferent to his medical needs. The court finds most telling the facts that Hampton saw a paramedic five days after his fall and did not complain about his alleged injury and that he refused X-rays when they were offered.
 
 IV. Conclusion
 
 20
 For the foregoing reasons, the court grants defendants' motion for summary judgment in its entirety and dismisses this action with prejudice. Hampton's motions for court order pursuant to discovery, request leave to obtain affidavit, and order of court, filed March 23, 1992, are denied as moot.
 
 
 21
 /S/ George W. Lindberg
 
 George W. Lindberg
 United States District Judge
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 [1]
 In Hampton v. O'Grady, 89 C 7352 (N.D.Ill. April 30, 1991), this court dismissed defendants James O'Grady and Holmes from this action. The court dismissed defendant Leak as to his official capacity but he remained as to his individual capacity as did defendants Stewart, Jeter, Stitack, and Cooper. The name of Chris Staszak was not spelled properly in Hampton's complaint or in the court's previous memorandum opinion and order. This memorandum opinion and order refers to Staszak by the correct spelling
 
 
 [2]
 All events happened in 1989, unless otherwise noted
 
 
 [3]
 Hampton disputes many of these facts and defendants' exhibits, and the court has carefully considered each argument. Most are not disputes about a material fact or are unrelated to the issues in the case. For example, he argues that whether he was given a mental examination is "somewhat in dispute." Because this has no bearing whatsoever on the issues in this case, whether or what kind of mental examination he received is not a material fact
 
 
 [4]
 Only the Due Process Clause of the Fourteenth Amendment is applicable to Hampton as a pretrial detainee. See Anderson v. Gutschenritter, 836 F.2d 346, 348-9 (7th Cir.1988). However, the standard for analyzing a pretrial detainee's Fourteenth Amendment Due Process Claim is identical to the standard employed to judge a convicted inmate's Eighth Amendment cruel and unusual punishment claim. Shelby County Jail Inmates v. Westlake, 798 F.2d 1085, 1094 (7th Cir.1986)
 
 
 [5]
 Hampton in fact points out a discrepancy in defendants' exhibits in which Exhibit 2 indicates that Hampton was placed in Lower Cell 6 on April 16, while Officer Cooper states in his affidavit that he put Hampton in Lower Cell 6 on April 18. This inconsistency, however, is not material because Hampton fell on April 19
 
 
 [6]
 Hampton claims that he never saw any doctors make rounds and argues that this is a material fact in dispute. In light of Hampton's lack of documentation and defendants documentation that he had access to medical care this does not rise to the level of a material fact